**STATE of Missouri,
Respondent/Plaintiff,**

v.

**Estel E. SHOEMAKE,
Appellant/Defendant.**

**No. 57060.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 23, 1990.

Estel E. Shoemake, pro se.

Daniel P. Fall, Asst. Pros. Atty., Fredericktown, for respondent/plaintiff.

KAROHL, Judge.

Defendant, Estel E. Shoemake, appeals after conviction on misdemeanor charge of exceeding the speed limit in violation of Section 304.010 RSMo 1986. The court imposed a fine of $15.00 and costs.

Defendant contends: (1) there was insufficient evidence to sustain or support the court's finding of guilty; and (2) his constitutional rights were violated because he was placed in double jeopardy and not given the opportunity to confront witnesses.

Defendant was court tried on May 15, 1989. Evidence supportive of the trial court's decision showed that on November 13, 1988, at approximately 12:20 p.m., Sergeant Wilcox was patrolling Highway 72 in Madison County, Missouri. As he traveled westward, Wilcox observed defendant's automobile traveling eastward on Highway 72 at what Wilcox believed was a speed in excess of the fifty-five miles per hour speed limit. Wilcox checked defendant's speed with his radar unit which indicated defendant was traveling at sixty-nine miles per hour.

We reject defendant's claim that the evidence was insufficient to support the conviction. We review the evidence in the light most favorable to the state. *City of Kansas City v. Oxley*, 579 S.W.2d 113, 115 (Mo. banc 1979). The state was required to prove the radar unit was operating accurately at the time it was used to determine defendant's speed. *State v. Calvert*, 682 S.W.2d 474, 477 (Mo. banc 1984). It must be shown the radar device had been set by tuning forks which were calibrated by electronic equipment designed for that purpose. *See City of Kansas City v. Tennill*, 630 S.W.2d 173, 174 (Mo.App.1982).

Defendant states four reasons the state failed to prove the radar gun was properly functioning. Defendant asserts: (1) the court overlooked the mandatory requirement that regard must be given to proper maintenance and usage; (2) there was not a proper foundation laid for "the requisite tuning fork calibration"; (3) lack of founda-

tion laid as to personal observation; and (4) the state failed to prove the radar device was pointed at defendant's automobile.

■ In this case as in *Calvert*, Wilcox used moving radar to determine speed. Wilcox testified *without objection*. He testified he had operated radar for twenty-seven years. The tuning forks were serialized and issued to his particular radar unit. The tuning forks were certified as accurate prior to this speeding citation on May 19, 1988, and April 28, 1989. These serialized tuning forks were used to calibrate Wilcox' radar unit.

Wilcox further testified that both before and after using the radar device to determine the speed of defendant's vehicle, he checked the radar device's accuracy by conducting two tests. First, Wilcox tested the ground speed of the radar unit against the speedometer on Wilcox' patrol car. Second, Wilcox used tuning forks to calibrate the radar unit both before and after he stopped defendant. The tests indicated the radar unit was functioning properly. Furthermore, Wilcox testified there were no obstacles or obstructions between the radar unit and defendant's automobile when he recorded defendant's speed.

This testimony is sufficient to support a finding the radar unit was operating accurately at the time of its use relative to the offense. The evidence is sufficient to prove, beyond a reasonable doubt, defendant was driving at sixty-nine miles per hour. *See State v. Calvert*, 682 S.W.2d at 474.

■ Defendant next contends he was placed in double jeopardy and not given the opportunity to confront witnesses in violation of due process under the United States and Missouri Constitutions. This claim fails because it depends on a misunderstanding of fact and law.

Defendant pleaded not guilty to speeding. The day set for trial, December 29, 1988, defendant appeared. He filed a motion to dismiss asserting facts of a mechanical defect. Defendant believed in good faith the defect was repaired. However, it was not repaired and defendant's speedom-

eter gave him a false reading of his speed. The court granted defendant two weeks to file additional exhibits. On February 27, 1989, the court notified defendant to file the promised exhibits or it would rule on the matter. On March 3, 1989, the court attempted by mail to notify defendant it would rule on the case if no further filings were made.

On March 6, 1989, defendant sent the court a document showing repairs to the speedometer gear. Defendant intended this exhibit would prove that a mechanical problem, not attributable to defendant, misled defendant into a false belief he was driving within the speed limit. On March 9, 1989, the court found defendant guilty of speeding and notified defendant of its finding. On March 14, 1989, defendant filed for a trial de novo. On March 17, 1989, the judge entered an order setting aside his finding of guilty and ordered a new trial. On May 15, 1989, a different judge heard the cause and found defendant guilty.

The constitutional protection against double jeopardy "is applicable to a criminal proceeding once the defendant is put to trial before the trier of facts whether the trier be jury or a judge." *State v. Irving*, 559 S.W.2d 301, 307 (Mo.App.1977). "In a trial before a judge, jeopardy attaches upon the introduction of evidence." *State v. Stevenson*, 589 S.W.2d 44, 50 (Mo.App.1979) (citing *Serfass v. United States*, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). Here there was no trial in December 1988. No evidence was presented on that setting. No witnesses were sworn and no evidence was offered. An informal meeting with the judge resulted in a continuance to give defendant an opportunity to document his "defense." Hence, there was no trial, and there is no double jeopardy.

Defendant is correct when he claims the entry of conviction by the original judgment was done without affording him an opportunity to confront witnesses. There was no confrontation because there was no trial. The entry of judgment was a mistake. The judge recognized the case was not ready for decision, set aside the "judgment," and disqualified himself. The con-

viction now on appeal followed a trial where defendant's constitutional rights, including confrontation with witnesses, were fully respected.

We affirm.

CRANDALL, C.J., and REINHARD, J., concur.