**CITY OF SPRINGFIELD, Respondent,**

v.

**Garen WADDELL, Appellant.**

No. 19414.

Missouri Court of Appeals,
Southern District,
Division Two.

July 13, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied Aug. 4, 1995.

Application to Transfer Denied Sept. 19, 1995.

Garen Waddell, appellant, pro se.

No appearance for respondent.

Before PREWITT, CROW and PARRISH, JJ.

PER CURIAM.

A jury in Springfield Municipal Division 22 of the Circuit Court of Judicial Circuit 31 found Appellant guilty of speeding in violation of a Springfield municipal ordinance. The jury assessed punishment at a fine of one dollar. The trial court entered judgment in accordance with the verdict.

Appellant brings this appeal per § 479.150.2(2).[1] His brief, submitted pro se, presents the following point relied on:

"1. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: the evidence does not support the verdict beyond a reasonable doubt.

A. There is no competent evidence to establish what speed the Appellant was driving.

B. Evidence was entirely circumstantial.

C. Facts and circumstances relied on by prosecution were inconsistant [sic] with each other and with the hypothesis of guilt.

2. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: court lacked jurisdiction and thus verdict had no validity.

3. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: denial of change of venue, denial of peremtory [sic] challenge.

4. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: complete corruption of the record to the point of non-viability.

5. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: denial of due process of law by court's display of substantial bias and prejudice denying proper legal representation.

6. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: in permitting the prosecution to comment on Appellant's failure to call the witness.

7. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: erroniously [sic] placing burden of proof of jury and witness misconduct on Appellant.

8. Trial court erred in not entering a judgement of not guilty that Appellant was driving in excess of the posted speed limit because: seating of improper jury."

Rule 30.06(d)[2] sets forth the requirements for a point relied on in this appeal. Rules 37.01, 37.61(e), and 30.33; §§ 479.150.2(1)–(2) and 543.220.1. Rule 30.06(d) reads, in pertinent part:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...."

 Appellant's point relied on fails to satisfy the "wherein and why" requirement of Rule 30.06(d). *City of Springfield v. Rogers,* 867 S.W.2d 692, 693–94 (Mo.App.S.D. 1993); *State v. Root,* 820 S.W.2d 682, 685–86 (Mo.App.S.D.1991). An appellate court has no duty to resort to the argument portion of the brief to deduce wherein and why an appellant believes a trial court erred. *Root,* 820 S.W.2d at 686. Nonetheless, we have sifted the thirty pages of argument in Appellant's brief in an attempt to extract the import of each paragraph of his point. We shall address the contentions as we understand them, mindful that Appellant has the burden of demonstrating error. *State v. Harrison,* 539 S.W.2d 119, 121[1] (Mo.App. 1976).

 Contention 1(A) maintains the evidence was insufficient to support the verdict of guilty returned by the jury in that there was no competent evidence to establish Appellant's speed. In addressing that contention, we are aware that Respondent was required to prove Appellant guilty beyond a

---

**1.** References to statutes are to RSMo 1994 except where otherwise indicated.

**2.** Rule references are to Missouri Rules of Court (1994).

reasonable doubt. *City of Kansas City v. Oxley*, 579 S.W.2d 113, 114[1] (Mo. banc 1979). The standard of review for determining whether the evidence met that requirement is set forth in *State v. Grim*, 854 S.W.2d 403, 411[5] (Mo. banc 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

> "[W]e are required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. We disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. Taking the evidence in this light, we consider whether a reasonable juror could find each of the elements beyond a reasonable doubt."

■ As explained in *Oxley*, 579 S.W.2d at 115, an appellate court neither weighs the evidence nor judges the credibility of the witnesses. Those are tasks for the jury. *State v. Wright*, 476 S.W.2d 581, 584[4] (Mo. 1972).

■ Viewed favorably to the verdict, the evidence establishes that on the morning of September 28, 1993, Officer David Larry Tuter of the Springfield Police Department was operating a radar unit on Grand Street in Springfield. The power source for the unit was the battery on Tuter's motorcycle. The motorcycle engine was "turned off."

To "set up" the radar unit at that site, Tuter performed three procedures to ensure it was operating properly. First, he pushed a switch to determine whether all the tubes were working properly. He obtained a reading showing they were. Next, he did an "internal calibration" and again received a reading showing the unit was working properly. Finally, he struck a 50 mile-per-hour tuning fork in front of the unit and obtained a 50 mile-per-hour reading. He testified he followed these procedures "before and after each stop."

Asked whether he did anything else before directing the radar unit toward vehicular traffic, Tuter explained he performed a "sweep [of] the area with the radar" to detect outside interference. He observed none.

Between 10:30 and 11:00, Tuter saw a westbound Pontiac on Grand approaching his position. Tuter estimated its speed at 35 miles per hour, which exceeded the posted speed limit of 20 miles per hour. Tuter "put the radar unit into operation" and achieved a "radar lock" on the Pontiac, obtaining a reading of 36 miles per hour.

Tuter pursued the Pontiac and stopped it. Appellant was the driver. Tuter issued Appellant a citation for speeding.

One of Appellant's challenges to the sufficiency of the evidence is based on *City of St. Louis v. Boecker*, 370 S.W.2d 731 (Mo.App. 1963), and *State v. Weatherwax*, 635 S.W.2d 34 (Mo.App.W.D.1982), which hold that a speeding conviction cannot be based on radar without proof that the unit was tested and found to be operating properly at the site of the alleged violation and reasonably close to the time it occurred. *Boecker*, 370 S.W.2d at 737[5]; *Weatherwax*, 635 S.W.2d at 35.

Appellant maintains Tuter's testimony was insufficient to demonstrate compliance with *Boecker* and *Weatherwax* in that Tuter was unable to recall what time he calibrated the radar unit.

Asked on cross-examination what time he calibrated the unit, Tuter replied it could have been 9:30 or 10:15. That would have been anywhere between 15 and 90 minutes before Appellant's Pontiac appeared.

In *Boecker*, the officer tested the radar unit with a tuning fork before he left the police station to go on duty. 370 S.W.2d at 734. He did not test the unit at the site of the violation, and there was no evidence regarding the elapsed time between the test at the station and the violation. *Id.* In *Weatherwax*, the officer tested the radar unit with tuning forks at his home at 7:00 a.m., before going on duty. 635 S.W.2d at 34–35. Some four hours later, at a different location, he used the unit to detect a speeding violation. *Id.* at 35. He did not test the unit at that site, nor did he test it again until going off duty at 4:00 p.m. *Id.* In both cases, appellate courts held the evidence insufficient to support a conviction.

Appellant, who acquired knowledge about radar in military service, asserts his research

disclosed no case that holds the accuracy of a radar unit can be established solely by a tuning fork.

The subject was addressed in *Boecker*, where the appellate court did not question the use of a tuning fork to test the accuracy of a radar unit "as a matter of principle." 370 S.W.2d at 736. However, *Boecker* noted the value of such a test hinged on the accuracy of the tuning fork. *Id.* Because there was no evidence that the tuning fork in *Boecker* was accurate, the appellate court had "grave doubts" that the test was sufficient to establish that the radar was functioning properly. *Id.* Despite such doubts, *Boecker* did not base reversal on the tuning fork test, but instead on the failure of the officer to test the unit at the site of the violation and reasonably close to the time it occurred. *Id.* at 736–38.

■ Here, there was evidence regarding the accuracy of the tuning fork and radar unit. Don Oliver, who holds a "radio telephone operator's license" from the Federal Communications Commission ("FCC"), has "certified" radar units for "eight to ten years." On May 7, 1993, he certified the unit used by Tuter.

Explaining the process, Oliver testified that the frequency of the tuning fork for that unit is counted by an electronic frequency counter at his shop. Accuracy of the unit itself is tested by the tuning fork and by two other tuning forks at the shop. Oliver avowed Tuter's radar unit had these margins of error: $\frac{4}{100}$ of a mile per hour at 30 miles per hour, $\frac{12}{100}$ of a mile per hour at 50 miles per hour, and $\frac{5}{100}$ of a mile per hour at 65 miles per hour.

In *State v. Moore*, 700 S.W.2d 880 (Mo. App.E.D.1985), the arresting officer tested his radar unit with a 30–mile–per–hour tuning fork and a 70–mile–per–hour tuning fork approximately an hour before using the unit to gauge the accused's speed. *Id.* at 881. The officer repeated the procedure immediately after the arrest. *Id.* The officer had tested the tuning forks by striking them in front of a frequency counter some eight months before the arrest. *Id.* 882. The conviction was affirmed.

In *State v. Shoemake*, 798 S.W.2d 191 (Mo. App.E.D.1990), the arresting officer tested his radar unit with tuning forks before and after using the unit to gauge the accused's speed. *Id.* at 193. The forks had been certified as accurate six months before the arrest, and were again certified as accurate five months following the arrest. *Id.* The officer also tested the ground speed of the radar unit against the speedometer on his vehicle. *Id.* The conviction was affirmed.

Here, the interval between the date Oliver certified Tuter's radar unit (including tuning fork) and the date Tuter used the unit to gauge Appellant's speed was shorter than the intervals in *Moore* and *Shoemake*. Like the officers in those cases, Tuter performed a tuning fork test on his unit before and after stopping Appellant. Consistent with *Moore* and *Shoemake*, we reject Appellant's claim that the evidence was insufficient to support a finding that Tuter's unit was accurately gauging speed when it gauged Appellant's speed.

■ Appellant argues that Grand Street has four lanes, and traffic in the two eastbound lanes made it impossible for the radar to accurately gauge his speed. However, Tuter testified there were no other vehicles in the area which would have interfered with the radar reading Tuter got on Appellant's Pontiac. Credibility of Tuter's testimony was for the jury. *State v. Jeffries*, 858 S.W.2d 821, 823–24[4] (Mo.App.E.D.1993). The jury evidently believed Tuter.

Appellant also argues that a curve in Grand Street, coupled with visual obstructions including trees, signs, poles and other objects, made it impossible for Tuter's radar "to obtain an accurate reading." Appellant presented photographs of the area to the jury in support of that hypothesis. Appellant has filed the photographs with us. They depict a street flanked by trees, signs and poles, but no more than normal for a four-lane street.

Tuter testified he saw Appellant's Pontiac when it was 250 to 300 feet east of Tuter's location. Tuter recounted there were no obstructions "to cause interference with the

radar." The jury was entitled to believe that testimony. *Jeffries,* 858 S.W.2d at 824.

Appellant attacks the testimony of witness Oliver, who certified Tuter's radar unit. Appellant asserts Oliver "admitted to violating Federal, State and Local Laws in the performance of his responsibilities for the radar." In support of this accusation, Appellant cites a segment of the transcript where Oliver stated he occasionally pointed radar units at oncoming traffic when returning them after inspection.

▇▇▇ Appellant does not (a) identify the laws violated, (b) explain how the alleged violations destroy the competency of Oliver's testimony, (c) cite any authority on the subject, or (d) explain why he cites none. An appellate court is not required to review a contention when it appears without citation of applicable authority. *State v. Higgins,* 852 S.W.2d 172, 175[4] (Mo.App.S.D.1993). Absent proper explanation concerning why no authority is cited, a contention unaccompanied by citation of authority is deemed waived or abandoned. *Id.* at 175[5].

Appellant also questions other aspects of the evidence, such as the power source for the radar and the length of time his Pontiac was near the radar. Such factors were for the jury's consideration. They do not render the evidence insufficient to support the verdict. Appellant's contention 1(A) is without merit.

▇▇▇ Appellant bases contentions 1(B) and 1(C) on the premise that the evidence against him was entirely circumstantial. Circumstantial evidence is evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists. *State v. Fleer,* 851 S.W.2d 582, 598[50] (Mo. App.E.D.1993).

Appellant cites no case holding a radar measurement of an automobile's speed is circumstantial evidence. Because of *Grim, supra,* 854 S.W.2d 403, we need not decide whether it is. Until *Grim,* the standard of review for sufficiency of the evidence where a criminal conviction was based on circumstantial evidence differed from the standard where a conviction was based on direct evidence. *Id.* at 405–08. *Grim* held that hence-

forth, the standard would be the same for all criminal convictions, whether based on direct evidence, circumstantial evidence, or both. *Id.* The standard in *Grim* is quoted earlier in this opinion. We hold the evidence in the instant case met that standard. Appellant's contentions 1(B) and 1(C), which are based on the pre-*Grim* circumstantial evidence standard, provide no basis for reversal.

Contention 2 asserts the trial court "lacked jurisdiction," hence the verdict "had no validity."

▇▇▇ A court has jurisdiction if it has judicial authority over the subject matter and parties. *State ex rel. Furstenfeld v. Nixon,* 133 S.W. 340, 342 (Mo.1910); *Lake Wauwanoka, Inc. v. Spain,* 622 S.W.2d 309, 314[7] (Mo.App.E.D.1981). Appellant, as we understand his argument, does not contend the trial court lacked jurisdiction to adjudicate violations of Springfield traffic ordinances. Instead, Appellant maintains Respondent never proved Tuter's radar unit was "licensed or authorized" by the FCC. Appellant also avers Oliver violated his FCC license in testing and using radar units. These factors, says Appellant, "barred jurisdiction, and nullified any verdict derived thereof."

Appellant cites no authority in support of that hypothesis, and we are aware of none. We fail to see how lack of an FCC license for Tuter's radar unit (if indeed one was required), or how a violation by Oliver of his FCC license (if indeed any occurred), divested the trial court of jurisdiction. Contention 2 is denied.

Contention 3 complains about "denial of change of venue." Appellant filed a "Motion for Change of Venue Out of Time" on the day trial began (January 10, 1994). The motion prayed that the case be transferred to Division 3 of the Circuit Court of Judicial Circuit 31 or to Dallas County, which lies in Judicial Circuit 30. The trial court denied the motion.

The motion did not cite any rule or statute authorizing the change of venue. Appellant cited none to the trial court when it took up the motion. Appellant's brief likewise cites none.

Rule 37 governs the procedure in courts having original jurisdiction of ordinance violations. *See:* Rule 37.01. We find no provision in Rule 37 for a change of venue.[3]

Section 479.150.2, which authorizes Respondent to provide by ordinance for jury trials in its municipal court, provides that such trials shall be conducted "in accordance with procedures applicable before circuit courts." § 479.150.2(1). It is thus arguable that Rule 32.04, which governs changes of venue for criminal cases in circuit courts, applies here. Paragraph "(b)" of the rule establishes a deadline for filing an application for a change of venue.

■ Assuming—without deciding—that § 479.150.2(1), coupled with Rule 32.04, authorizes a change of venue in a municipal ordinance violation case, Appellant has shown no error in the denial of his motion. Our study of the record reveals Appellant filed his motion after the deadline in Rule 32.04(b). His motion tacitly concedes this, as its caption brands it "Out of Time."

Appellant cites no authority holding it is error to deny an untimely motion for change of venue, particularly where (as here) nothing in the record suggests an accused cannot receive a fair trial by jury in the locale where the case is pending. Assuming, arguendo, that Appellant had a right to a change of venue upon timely application—we do not imply he did—we hold the trial court did not err in denying Appellant's untimely application.

In his brief, Appellant declares Respondent is not empowered to hold jury trials, therefore his case should have been "transferred to the appropriate court." In support of that hypothesis, Appellant cites "House Bill # 1386."

We are unable to find any statute pertaining to jury trials of municipal ordinance violations which was enacted as House Bill 1386. Section 479.150.2, which authorizes Respondent to provide by ordinance for jury trials in its municipal court, was in force when Appellant was tried. Appellant cites no authority

suggesting § 479.150.2 is invalid. We find no merit in Appellant's claim of error regarding denial of his motion for change of venue.

Contention 3 also assigns error in the trial court's denial of "peremtory [sic] challenge." We gather from the argument in Appellant's brief that he refers to the trial court's denial of a "Motion for Change of Judge Out of Time" filed by Appellant on the day trial began.

The motion did not cite any rule or statute authorizing the change of judge. In oral argument to the trial court, Appellant cited Rule 37.53. Paragraph "(a)" of the rule provides it does not govern the procedure for disqualification of a judge in ordinance violation cases in which there is a timely exercise of a right to a jury trial.

Appellant's brief cites no rule, statute or case demonstrating that the denial of his motion for change of judge was error.

Rule 37.61(e) pertains to jury trials of ordinance violations; it provides that such trials "shall proceed in the manner provided for the trial of a misdemeanor by the rules of criminal procedure."

Rule 32.07(b) governs applications for a change of judge in misdemeanor cases. The application must be filed not later than ten days before the date set for trial, unless the designation of the trial judge occurs less than ten days before trial. Here, the trial judge was designated more than ten days before the trial date.

■ Assuming—without deciding—that Rules 37.61(e) and 32.07(b), read together, authorize a change of judge in a municipal ordinance violation case tried by jury, Appellant has shown no error in the denial of his application. Appellant filed the application after the deadline in Rule 32.07(b), as indicated by the caption on the motion which brands it "Out of Time." Appellant cites no authority holding it is error to deny an untimely application for change of judge. The claim of error is denied.

---

**3.** Rule 37.08 reads: "If no procedure is specially provided by this Rule 37, the judge having jurisdiction shall proceed in a manner consistent with judicial decisions, applicable statutes or other rules of this Court."

Contention 4 complains about corruption of the record, but identifies no specific defect or omission. The five pages of argument on contention 4, as we comprehend them, maintain that the record does not contain every document filed in the trial court and does not show everything that occurred before and after trial. The argument mentions numerous alleged deficiencies, but makes only a general allegation of prejudice. No specific prejudice is attributed to any alleged flaw.

We have studied the argument and have found nothing in it which warrants reversal. Further discussion would serve no jurisprudential purpose. Contention 4 is denied per Rule 30.25(b).

Contention 5 complains about the trial court "denying proper legal representation." Again resorting to the argument portion of Appellant's brief, we gather this complaint is based on Appellant's alleged indigence and his belief that the trial court was consequently required to appoint counsel for him.

Section 600.042 reads, in pertinent part:

"10. The [state public defender] director and defenders shall provide legal services to an eligible person:

. . . . .

(5) For whom, in a case in which he faces a loss or deprivation of liberty, any law of this state requires the appointment of counsel; however, the director and the defenders shall not be required to provide legal services to persons charged with violations of ... municipal ordinances."

▆▆ Inasmuch as Appellant was charged with a municipal ordinance violation, he was ineligible for public defender representation.

▆▆ Furthermore, some two months before trial, Appellant and the prosecutor appeared in the trial court, whereupon the prosecutor announced Respondent would not seek a jail sentence if Appellant was convicted. There is no constitutional impediment to an uncounseled misdemeanor conviction where imprisonment is not imposed. *White v. King,* 700 S.W.2d 152, 155[7] (Mo.App. W.D.1985). Appellant was convicted of only a municipal ordinance violation, not a misdemeanor. Furthermore, he was sentenced to only a fine and court costs. If an accused is merely fined and not sentenced to any term of imprisonment, he has no constitutional right to counsel. *State v. Albright,* 843 S.W.2d 400, 404[11] n. 3 (Mo.App.W.D.1992). Contention 5 is meritless.

Contention 6 asserts the trial court erred "in permitting the prosecution to comment on Appellant's failure to call the witness." We divine from the argument portion of Appellant's brief that this complaint is based on a segment of the cross-examination of Appellant by the prosecutor wherein the prosecutor established that Appellant had the number of a city bus that, according to Appellant, was in front of him just before Tuter stopped him. The prosecutor's questions and Appellant's answers established that Appellant could have obtained the bus driver's name and subpoenaed him.

Appellant maintains the bus driver was equally available to the prosecution, hence the prosecutor's "comments" on Appellant's failure to call the driver were improper.

Nowhere in Tuter's testimony is there any mention of a bus, and nothing in the record indicates Respondent had knowledge of an alleged bus until Appellant mentioned one at trial. The thrust of the prosecutor's questioning was that because Appellant claimed to have written down the bus number, he could have produced the driver at trial if indeed there had been a bus at the site when Tuter stopped Appellant. The obvious implication is that no bus was there. It is thus arguable that the bus driver mentioned by Appellant *was not equally available to Respondent.* However, we need not resolve that issue.

Appellant did not object to the prosecutor's questions which he now complains about in contention 6. Furthermore, Rule 29.11(d) provides that in jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial, subject to certain exceptions which do not apply to contention 6. As explained below, Appellant failed to satisfy that requirement.

Immediately after the verdict, the trial court granted Appellant until January 28, 1994, to file a motion for a new trial. Appel-

lant filed several documents in the trial court within that deadline. The only one resembling a motion for a new trial was a four-page document captioned "Petition for Trial De Novo from Municipal Decision and for Relief from Imposition of Illegal and Unconstitutional Sentence and Fine." We need not decide whether it qualifies as a motion for new trial because even if it does, it fails to mention the alleged error presented by contention 6.

Because Appellant failed to object at trial to the prosecutor's questions regarding the bus driver and failed to mention the matter in a motion for new trial, contention 6 is not preserved for review. *State v. Maxwell,* 465 S.W.2d 562, 563[2] (Mo.1971).

Contention 7 refers to both jury misconduct and witness misconduct at trial. We first address the alleged jury misconduct.

After Respondent rested its case, the trial court declared a recess, admonishing the jurors not to discuss the case among themselves or with others, or to permit anyone to discuss it in their hearing.

During the recess, Appellant moved for a mistrial because Tuter "was out there talking to the jurors." The prosecutor stated that because "this is a nonsmoking building," persons who smoke must do so outside, and Tuter (a smoker) was outside talking to someone.

In support of his motion for mistrial, Appellant presented testimony by Marbelene Pankey. She recounted she saw a police officer, identified to her as Tuter, talking to a female juror. Pankey "heard something in reference to a tuning fork." Pankey also heard the juror ask Tuter "how someone was"—the name sounded like Kerry or Kenny. Pankey added that she saw Tuter talking to another woman whom she believed was a juror.

The trial court called Tuter into the courtroom and questioned him. Tuter admitted talking to a juror but avowed he did not know her name. Tuter testified they talked three or four minutes while smoking, and the conversation did not pertain to the trial. Asked specifically whether he talked about tuning forks, Tuter replied, "No, sir."

Appellant then presented testimony by his wife in support of the motion for mistrial. She stated Tuter's conversation with the juror lasted "a good five, ten minutes."

Appellant asked the trial court whether it would be possible to call the juror as a witness on the motion for mistrial. The trial court told Appellant he could do so but it may or may not be in his best interest.

■ Appellant replied: "I see what you mean, Your Honor. No. I don't wish to call her."

The trial court thereupon denied the motion for mistrial.

As explained earlier, § 479.150.2(1) provides that jury trials in Respondent's municipal court shall be conducted "in accordance with procedures applicable before circuit courts." Section 494.495 provides a court may permit the jury to separate at any adjournment or recess during the trial and jury deliberation in all cases of misdemeanor or felony, except in capital cases. Consequently, separation of the jurors during the recess in Appellant's trial was not error *per se.*

Appellant cites §§ 546.230 and 546.240, RSMo 1986, which formerly governed jury separation and sequestration; however, those statutes were repealed in 1989. Laws of Missouri 1989, S.B. Nos. 127 *et seq.*

■ Where a motion for new trial is made on account of communications to the jury during the progress of the trial, there is a rebuttable legal presumption that they were prejudicial to the moving party, and where competent evidence is offered it is the duty of the trial court to hear and consider it; when the court does so, its decision is reviewable for abuse of discretion only. *State v. Evans,* 699 S.W.2d 514, 517[4] (Mo.App.S.D. 1985).

In our discussion of contention 6, we referred to a document filed by Appellant after the verdict which could arguably be considered a motion for new trial. In it, Appellant complained about Tuter's conversation with the juror. In adjudicating the claim of jury misconduct in contention 7, we shall assume—without deciding—that the document

qualifies as a motion for a new trial, thereby preserving that issue for review.

Appellant presented no evidence regarding the claim of jury misconduct at the hearing on his post-verdict motions, thus all of the testimony regarding that issue was heard by the trial court before it denied the motion for mistrial.

■■■■■ The truth or falsity of the testimony of Pankey, Tuter, and Appellant's wife on the issue of jury misconduct was for the trial court to determine in the exercise of sound judicial discretion. *State v. Stillings,* 882 S.W.2d 696, 700 (Mo.App.S.D.1994); *State v. Duckett,* 849 S.W.2d 300, 305 (Mo. App.S.D.1993). Tuter's testimony, if believed, was sufficient to rebut the presumption of prejudice. The trial court evidently found Tuter's testimony credible. On the record here, we cannot convict the trial court of abusing its discretion in that finding. Accordingly, we hold the trial court did not err in denying Appellant's motion for mistrial on the ground of jury misconduct.

Appellant complains that the trial court erroneously placed the burden of proof on him regarding jury misconduct. As we understand Appellant's brief, he bases this complaint on a statement to him by the trial court that he (Appellant) could call any witnesses he desired on the motion for mistrial.

Nothing in the record indicates the trial court had the notion that it was Appellant's burden to prove Tuter's conversation with the juror was prejudicial. After Appellant presented Pankey's testimony about Tuter's conversation with the juror, it was the trial court who called Tuter into the courtroom and questioned him about the incident. After the trial court questioned Tuter, the court allowed Appellant to question him. Appellant's complaint about the burden of proof is unsupported by the record, and is denied.

We next address the complaint about witness misconduct in contention 7.

■■■ During the recess where Tuter talked to the juror, he also talked to witness Oliver who, it will be recalled "certified" Tuter's radar unit. Appellant moved for a mistrial because of that conversation, and presented testimony by Oliver and Tuter about it.

Oliver admitted talking to Tuter, but testified it was just "general conversation." Oliver denied any discussion with Tuter about Appellant's case.

Tuter admitted talking to Oliver, but avowed they were "talking about motorcycles." Tuter denied conversing with Oliver about tuning forks, radar certification, or anything else regarding Appellant's case.

The testimony of Oliver and Tuter about their conversation was uncontradicted. The trial court denied the motion for mistrial.

The cases cited in our discussion of the jury misconduct issue establish that the credibility of the testimony of Oliver and Tuter about their conversation was for the trial court to determine. The trial court evidently found their testimony credible.

More importantly however, the conversation occurred *after* both of them had testified in front of the jury. Consequently, their testimony to the jury could not have been affected by their conversation. Appellant cites no case where a conviction by jury was reversed because two prosecution witnesses conversed with each other after presenting their testimony to the jury. We hold the trial court did not abuse its discretion in denying Appellant's motion for mistrial on the ground of witness misconduct.

■■■ This brings us to contention 8, Appellant's final claim of error: "seating of improper jury." Because contention 8 does not specify what was improper, we have endeavored to identify the alleged impropriety by probing the argument following contention 8.

According to the argument, an alternate juror had to serve as an alternate on a jury in a case immediately after Appellant's case and was not asked whether that would be a problem. Appellant does not allege this alternate juror replaced a regular juror during his trial, and we find nothing in the record indicating that an alternate juror participated in the verdict. Furthermore, nothing in the record suggests this alternate juror was inconvenienced by serving in both Appellant's case and the next case (if indeed that oc-

curred), and Appellant fails to explain how this could have been prejudicial to him.

The only other averment in the argument regarding the composition of the jury is an allegation that the jury pool "did not consist of impartial jury of the county and record shows that jury seated was biased, prejudiced, and tainted." Appellant does not explain how the record shows this, and cites nothing in the record substantiating the complaint. Contention 8 is denied.

In adjudicating this appeal, we resorted to the argument in Appellant's brief in an effort to discover the meaning of the eight numbered contentions in his point relied on. As noted early in this opinion, this is a task we were not obliged to undertake. The argument contains a multitude of other complaints, accompanied by accusations of misconduct against the trial court, prosecutor and others. We have not addressed the matters referred to in the preceding sentence because we find no connection between them and anything in the point relied on. Appellate review is limited to matters raised in the points relied on. *State v. Gooch*, 831 S.W.2d 277, 277[2] (Mo.App.S.D.1992).

Judgment affirmed.