**STATE of Missouri, Respondent,**

v.

**Marbis RAWLINS, Appellant.**

No. WD 51165.

Missouri Court of Appeals,
Western District.

Oct. 8, 1996.

Weldon W. Perry, Jr., Lexington, for appellant.

Terrence M. Messonnier, Lexington, for respondent.

Before EDWIN H. SMITH, P.J., and BRECKENRIDGE and ELLIS, JJ.

BRECKENRIDGE, Judge.

Marbis D. Rawlins appeals from a conviction of speeding, in violation of § 304.010, RSMo 1994. Ms. Rawlins contends that the trial court erred by allowing a state trooper to testify that he used a radar device to determine the speed of Ms. Rawlins' vehicle without a showing that the device had been adequately tested; that the trial court erred by submitting a jury instruction which authorized a guilty verdict on a finding of any speed exceeding 70 miles per hour, and which improperly allowed the jury to set the fine; and that the trial court erred by allowing the prosecutor to assert, during closing argument, that Ms. Rawlins could pursue a separate civil action to assert her claim that the trooper acted improperly when he stopped her, as such argument was outside the scope of the record in this case.

The judgment of the trial court is affirmed.

On September 24, 1994, Trooper Eric Criss of the Missouri State Highway Patrol was traveling on eastbound Interstate 70 when he observed Ms. Rawlins' vehicle traveling westbound at what he believed to be an excessive speed. When Trooper Criss

checked Ms. Rawlins' speed with his radar unit, she was traveling at 86 miles per hour.

Trooper Criss crossed the median, stopped the vehicle which Ms. Rawlins was driving, and asked her for her driver's license. A radio check of the driver's license which Ms. Rawlins gave him indicated that it was not on file with the issuing state, the State of New Jersey. Also, Trooper Criss received conflicting answers when he asked Ms. Rawlins and her passenger about the purpose of their trip, which made him suspicious that she might be a drug courier. Trooper Criss informed Ms. Rawlins that she was under arrest for operating a vehicle without a valid driver's license.

Trooper Criss placed Ms. Rawlins in handcuffs and waited for a drug-sniffing dog to arrive for a search of the vehicle. No drugs were found during the search, and Ms. Rawlins was released after being given a speeding ticket for traveling 86 miles per hour in a 65 miles per hour zone. The traffic stop lasted a total of two and a half hours.

At the ensuing trial for speeding, Trooper Criss described the procedures he used to ensure that the radar device was operating accurately. Trooper Criss testified that he tested his radar device with tuning forks each day, both at the beginning and at the end of his shift, as well as after each enforcement. In addition, Trooper Criss testified that he used the internal calibration within the device to test its accuracy. Trooper Criss also stated that he had followed these procedures prior to his stop of Ms. Rawlins. Trooper Criss further testified that he had received training in the use and testing of both the radar device and the tuning forks, and that he had received a certificate in connection with this training.

When Trooper Criss was then asked how fast Ms. Rawlins was driving when he checked her speed with the radar device, Ms. Rawlins' counsel objected on the ground of a "lack of foundation concerning time, nature, extent, and location of test to ensure operability and accuracy of the device on this occasion." The trial court overruled the objection, and Trooper Criss testified that the radar device clocked Ms. Rawlins at 86 miles per hour.

The jury found Ms. Rawlins guilty and assessed a fine in the amount of $150.00. At the time of sentencing, the trial court followed the recommendation of the jury and ordered Ms. Rawlins to pay a fine of $150.00 and court costs. Ms. Rawlins appeals.

■ In her first point on appeal, Ms. Rawlins claims that the trial court erred by allowing Trooper Criss to state the speed recorded by his radar device without having established a sufficient foundation for such testimony. According to Ms. Rawlins, the State failed to establish the accuracy of the radar device by showing that it had been tested at a time sufficiently close to the stop or at a location near the scene of the stop.

Ms. Rawlins argues that her conviction should be reversed because this case is controlled by *City of St. Louis v. Boecker*, 370 S.W.2d 731, 737 (Mo.App.1963); *State v. Weatherwax*, 635 S.W.2d 34, 35 (Mo.App. 1982), and *City of Jackson v. Langford*, 648 S.W.2d 927, 929 (Mo.App.1983), which hold that a speeding conviction cannot be based upon a radar device reading without proof that the device was tested and found to be functioning properly at the site of the alleged violation and reasonably close to the time it occurred.

In *Boecker*, the officer tested the radar device with a tuning fork before he left the police station to go on duty. 370 S.W.2d at 734. In *Weatherwax*, the officer tested the radar device with tuning forks while parked in the driveway of his home prior to going on duty. 635 S.W.2d at 34–35. In *Langford*, there was no evidence of the time and place of testing. 648 S.W.2d at 929. In these cases, the courts held the evidence to be insufficient to support a conviction.

■ These cases, however, are not controlling. First, they involve a stationary radar device, not moving radar as we have here. As the Missouri Supreme Court noted in *State v. Calvert*, 682 S.W.2d 474, 478 (Mo. banc 1984), a site test is of questionable utility in the case of a moving radar device, and therefore when moving radar is at issue, the controlling principle is that the State must prove the operational accuracy of the

radar device at the time, not site, of its use in the stop at issue.

With respect to the requirement that the radar device be shown to be operating accurately at the time of its use relative to the violation, the *Calvert* court looked to the facts of the case. *Id.* at 477–78. There, the arresting officer tested the radar device at the beginning and end of his shift on the day of the arrest; he was aware of the possibility of external interference with the radar readings, but had never experienced any interference in the area where he arrested the defendant; he was trained to evaluate the accuracy of the radar unit and could detect and correct for any spurious readings; and he periodically checked the radar readings with his calibrated speedometer. *Id.* In finding that this evidence was sufficient proof that the radar unit was operating accurately at the time of arrest, the Missouri Supreme Court effectively rejected the more stringent requirement of *Boecker* and *Weatherwax* that the radar unit be tested reasonably close to the time of the stop. *Id.* at 478.

Other courts have utilized the *Calvert* standard to affirm the admission of radar test results where there was no proof of a test of the radar unit at the site of the traffic stop or reasonably close in time to the stop. *State v. Shoemake,* 798 S.W.2d 191, 193 (Mo.App. 1990); *City of Berkeley v. Stringfellow,* 783 S.W.2d 501, 504 (Mo.App.1990); *State v. Guenther,* 744 S.W.2d 564, 565 (Mo.App. 1988).

In applying this standard to the facts of this case, we find there is sufficient foundation to establish the accuracy of the radar device at the time of Ms. Rawlins' stop. Trooper Criss testified that he tested the radar device with tuning forks at the beginning and end of his shift. Prior to stopping Ms. Rawlins, he had also checked the device through its internal calibration check, and it was functioning properly. He was trained to detect if there was any radio frequency interference in the location of Ms. Rawlins' stop and there was none. Under this evidence, the results of the radar test were properly admitted. Ms. Rawlins' first point on appeal is denied.

■ In her second point on appeal, Ms. Rawlins claims that the trial court erred by submitting a jury instruction which did not require a finding that she was driving at a speed of 86 miles per hour, but instead authorized a guilty verdict on a finding of any speed exceeding 70 miles per hour. Ms. Rawlins further complains that the instruction allowed the jury, not the trial court, to set the fine, and she argues that such a provision was in violation of Notes on Use 2 accompanying MAI–CR3d 304.02.

■ The MAI–CR3d series does not include a specific verdict directing instruction for the offense of speeding. MAI–CR3d 304.02 is a generic verdict directing instruction, and its Notes on Use 2 states that MAI–CR3d 304.02 must be followed in cases where there is no appropriate verdict directing instruction for the crime charged. In reviewing the verdict director submitted by the trial court as Instruction No. 5, we find that, although it purports to follow the format of MAI–CR3d 332.40, it also complies with the format of MAI–CR3d 304.02.

One element of Instruction No. 5, as submitted by the trial court, required that the jury find that Ms. Rawlins drove her motor vehicle "at a speed in excess of seventy miles per hour." The State's evidence was that Ms. Rawlins was traveling at 86 miles per hour, while Ms. Rawlins testified that her speed was 65 or 66 miles per hour, but in no event greater than 70. Ms. Rawlins contends that Instruction No. 5 gave the jury a roving commission, because the jury may have found her guilty predicated upon a finding of fact contrary to evidence, i.e., that she was driving at a speed of 71 to 85 miles per hour, or over 86 miles per hour.

■ Because MAI–CR3d 304.02 is a generic instruction, it does not direct how the elements of the offense of speeding should be framed. Notes on Use 10 of MAI–CR3d 304.02 simply suggests a careful reading of the appropriate statutes, examination of the charge against the defendant, and consideration of the evidence. "A verdict-directing instruction must contain each element of the offense charged and must require the jury to find every fact necessary to constitute essen-

tial elements of offense charged." *State v. Ward,* 745 S.W.2d 666, 670 (Mo. banc 1988). In cases challenging the language used in verdict directors, "[i]t has been repeatedly held that a verdict directing instruction, which is not erroneous for some other reason, meets the minimum requirements when in words and effect it follows the language of the statute...." *State v. Hammond,* 571 S.W.2d 114, 116 (Mo. banc 1978) (quoting *State v. Jones,* 365 S.W.2d 508, 515 (Mo.1963) (citations omitted)).

Here, Instruction No. 5 incorporated the concept and a portion of the language of § 304.010, which provides that no vehicle shall be "operated in excess of seventy miles per hour...." Nothing in the charge or evidence of the case makes this statutory language inappropriate. From the testimony at trial, Ms. Rawlins was either driving 86 miles per hour or under 70 miles per hour. There is no contention by anyone of any other speed. The use of the statutory language in the instruction to require a finding that Ms. Rawlins was driving in excess of 70 miles per hour was not erroneous.

█ Ms. Rawlins next contends that the instruction was contrary to MAI–CR3d 304.02, Notes on Use 2, because it directed the jury, not the court, to set the fine. Her claim of error fails, however, because Notes on Use 16, rather than Notes on Use 2, governs the submission of punishment to the jury. Under Notes on Use 16, when the offense charged is a class A, B, C, or D felony; an A, B or C misdemeanor; an infraction; or an unclassified code offense, the issue of a fine is to be determined by the court and not submitted to the jury. When the crime charged is a non-code offense, however, the issue of a fine is submitted to the jury.

The offense of speeding, under § 304.010, is a non-code offense. *See State v. Canepa,* 670 S.W.2d 205, 206 (Mo.App.1984). Therefore, the trial court was correct in submitting the issue of a fine to the jury. *Id.* Point two is denied.

█ In her third point on appeal, Ms. Rawlins claims that the trial court erred by allowing the prosecutor, during the rebuttal portion of his closing argument, to make statements that were outside the scope of the record in this case. The State, on the other hand, argues that the prosecutor's remarks were a proper response to issues raised during defense counsel's closing argument.

During closing argument, defense counsel referred to the deep personal disgrace which Ms. Rawlins and her passenger felt they had experienced during the traffic stop, and emphasized that Ms. Rawlins spent two-and-a-half hours in handcuffs during a fruitless search. Defense counsel argued that Ms. Rawlins had already been punished enough by the nature of the stop and, for this reason, the jury should find her not guilty. Specifically, defense counsel stated:

Even if there was overwhelming, competent evidence in this case that she was traveling 86 miles per hour as alleged in the ticket that Trooper Criss filled out here, ... did she deserve to be treated like she was? Is that fair? Is that free? I'm here to respectfully submit to you on Marbis' behalf that the answer to those questions is no.

And how do you stop that overbearing, oppressive, intrusive governmental intervention in someone's life in these same or similar circumstances? There's only one way, ladies and gentlemen. There's only way [sic]. And that's through you jurors collectively assembled as you are in this courtroom today, because your verdict is going to send a message. It's going to send a message as to whether or not this kind of thing is going to be countenanced, approved, tolerated, acquiesced. Is it? Should it be?

. . . .

I don't think we want that kind of overly aggressive, intrusive law enforcement in this country, in this county, predicated on threshold facts like these, escalating into a two-and-a-half-hour ordeal in the darkness, in the cold on something like this.

Ladies and gentlemen, long story short, I'm here on behalf of Marbis to ask you, when you retire to your jury room, to give her the benefit of the reasonable doubt on this occasion under the totality of these circumstances. I'm here to respectfully

submit to you that if punishment is deserved under these circumstances here for a speeding episode, she's already served it. She served it out there on that highway. And we don't need to add financial insult to emotional injury. We're asking for your verdict of not guilty and the form and signature upon Verdict Form B. Thank you.

In the rebuttal portion of closing argument, the prosecutor responded to defense counsel's plea for jury nullification by arguing that if Ms. Rawlins was wrongfully damaged by the nature of the traffic stop, she would be able to pursue a claim for that damage in a separate cause of action. The prosecutor stated:

Let me start with a point Mr. Perry raised during his closing argument, that maybe, if you think about it long, you'll realize that life's not correct. He's argued that she has been damaged by what Trooper Criss did and that the only place in this country that she can come to get her rights rectified is this courtroom. Mr. Perry knows that that's not true. Mr. Perry knows there's a courtroom in Kansas City, a federal courtroom, where people who believe they've been held in violation of their rights can go and seek money damages.... If Ms. Rawlins thinks she was damaged by that, she can file a lawsuit and recover those damages.... Regardless of what you do today—even if you returned a not guilty verdict today just to avoid additional punishment, she could still go and get full recovery.

Defense counsel then objected that the prosecutor's argument was improper, and the objection was overruled by the trial court.

■ In her brief, Ms. Rawlins argues that the prosecutor's remarks on the issue of her ability to seek redress in a subsequent civil suit were improper because they were beyond the issues and evidence which the jury had before it in this case. But Ms. Rawlins' argument does not merit relief, for while it is improper for a prosecutor in closing argument to refer to subject matter not in evidence, there is no reversible error if such references are in retaliation to the closing argument of defense counsel. *State v.*

*Griffin,* 745 S.W.2d 183, 185 (Mo.App.1987). That is the case here, where defense counsel had invited retaliation by urging the jury to acquit his client as a way of compensating for the alleged improprieties by a state trooper. A defendant may not provoke a reply to his or her own argument and then claim error. *Id.* Point denied.

The judgment of the trial court is affirmed.

All concur.