

# In the Missouri Court of Appeals
## Eastern District
### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100354 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Hon. Steven H. Goldman |
| CHRISTOPHER GOERS, | ) | |
| | ) | Filed: |
| Appellant. | ) | May 27, 2014 |

Christopher Goers appeals from the judgment on his convictions by a jury of two counts of statutory sodomy committed against his daughter, M.G., when she was five. Goers challenges the sufficiency of the evidence, comments made during the State's closing argument and the admission of certain evidence. We affirm.

M.G. was 18 at the time she testified at trial. By her own and all other accounts, M.G. had a close relationship with Goers and spent a lot of time alone with him while she was growing up, both at their family home when her mother was working or out of town with M.G.'s two sisters and at the family cabin where M.G. and Goers often went alone. M.G. testified that Goers touched her inappropriately the first time when she was about five years old at their home. Goers made M.G. take a shower with him. They were both naked. Goers touched M.G.'s vagina and asked her if it felt good. He told her to wash his penis and showed her how to do so using her hand. His penis was erect. M.G. testified about several other times Goers touched her inappropriately at their home when

she was older, around the ages of 14 and 15. Goers never touched her inappropriately when they were away at the family cabin. She never told anyone about any of these incidents because Goers told her not to and she did not want her sisters to know.

Goers and M.G.'s mother divorced when M.G. was 15, and he moved out. Shortly thereafter, M.G. moved in with Goers and his girlfriend. M.G. testified that there were a lot of people living at her mother's house and a lot of tension, so she chose to move out because she did not want her sisters to move in with Goers and have something happen to them; she also testified that she had more freedom at her father's house than at her mother's and that one of the reasons she left her mother's house was to see more of her boyfriend. She stayed with Goers for several months, then Goers said he needed to move to St. Charles and she could come with him. M.G. testified that she did not want to be alone with him "all the way out there," but she also admitted that she knew he was going to be living with his mother and her husband. According to M.G., Goers grounded her for a month when he learned she was not going to move with him, during which time she could not see her boyfriend.

M.G. testified that, around this time, she had been thinking a lot about how Goers had touched her inappropriately. She decided to tell her boyfriend about it. He suggested they talk to a school counselor, which they did the next day. She felt it was a safe time to tell the counselor. M.G.'s mother was called and joined them at school. After their conversation with the school counselor, M.G. was interviewed at home by the police and children's services about her allegations. She also gave written statements. M.G. stayed with her mother thereafter and did not tell Goers she had left.

The police had M.G. call Goers a few days after that, and the phone conversation was recorded. The audio recording made on the recording device was transferred to a CD and then deleted from the device itself; the police also video recorded the call. The audio CD and the video on DVD were admitted at trial and played for the jury during examination of the witnesses; the jury also listened to the CD and watched the DVD repeatedly during deliberations. It is undisputed that Goers's end of the conversation is almost entirely inaudible on both recordings.[1] M.G.'s voice is very clearly understood. All of those privy to the conversation testified about it: M.G. and Goers; the officer in the room during the call, who also listened again to the entire conversation on the recording device shortly after the call ended (before it was transferred to CD and deleted) and could clearly hear both parties; M.G.'s mother who was also in the room and could hear parts of what Goers said; and Goers's girlfriend who was near him while he was talking. Piecing the testimony together with what is clearly audible from the CD, the conversation went as follows:

The phone call started with a brief discussion of when M.G. would pick up her things. Then M.G. said she wanted to talk to Goers about why she did not want to move with him. She said she did not want the same thing Goers did to her when she was "little" to happen to her sisters, to which Goers said "what?" M.G. said "with you touching me, I didn't want the same thing to happen to [my sisters]." Goers said "ok" or "whatever." M.G. said "ok" a couple of times and then "bye." Goers said that M.G. really hurt him and asked why she did this. M.G. said she did not want it to happen to her again either. Goers responded that "happened years ago" or something to that effect. Goers said M.G. had told others she was not moving with him because of her boyfriend,

_____

[1] Only the CD has been made part of the record on appeal.

3

and M.G. said "no I didn't." Then he told her to do whatever she wanted and accused M.G. of making up an excuse for not wanting to move with him, to which she responded "that is the truth." Goers asked if she was serious and then said if that is the truth, then why did M.G. move in with him in the first place. M.G. then repeated that she did not want it to happen to her sisters. Goers then asked M.G. who she told, and she said "nobody." Then Goers said this was our last goodbye, and M.G. said goodbye.

M.G. and her parents testified about M.G.'s medical conditions to varying degrees of specificity. By all accounts, M.G. had cancer before the age of five and had surgery at that time and again as a teenager. She was also diagnosed with ADHD and put on medication, including sleeping pills, around age five or six. At some point after the incidents of abuse when she was five and before the alleged incidents of abuse as a teenager, M.G. experienced sleepwalking, night terrors, heard voices, hallucinated and was diagnosed with a non-specific psychotic disorder. She treated with a psychiatrist and took medicine for her psychological issues, but those medicines did not affect her memory or perception of reality.

Goers testified in his defense, denying all of M.G.'s allegations. His motions for acquittal at the close of the State's case and at the close of all evidence were denied. Ten counts were submitted to the jury, two involving the shower incident, seven relating to the incidents when M.G. was a teenager and one incident involving her sister. The jury deliberated for 12 hours and returned a guilty verdict on the two counts of statutory sodomy in the first degree with respect to the shower incident that occurred when M.G. was five. They were unable to reach a verdict on the remaining eight counts, and the trial

4

court declared a mistrial on those.  Goers's motion for new trial was denied, and he was sentenced to 20 years on each count to run concurrently.

In Point I, Goers argues that the evidence was insufficient to support his conviction.  Our review of this claim is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.  State v. Bowman, 337 S.W.3d 679, 688 (Mo. banc. 2011).  The evidence is viewed in the light most favorable to the verdict.  Id.  The evidence and inferences supporting the conviction are accepted as true and all contrary evidence and inferences are disregarded "unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them."  State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993).  We must presume that any conflicting inferences were resolved in favor of the prosecution and must defer to that resolution.  State v. Chaney, 967 S.W.2d 47, 53 (Mo. banc 1998).

Goers contends that M.G.'s testimony was not enough to support the conviction, nor were his statements on the phone call probative of guilt.[2]  Goers points out that M.G. chose to spend considerable time alone with Goers even after the shower incident and during the time of the other alleged incidents and that she only reported her allegations of abuse because she was mad at Goers for grounding her from seeing her boyfriend.  This argument amounts to no more than an attempt to have this Court reweigh the evidence

---

[2] Initially in his brief, Goers relied on the corroboration rule and claimed that M.G.'s testimony so conflicted with the surrounding circumstances that corroboration was necessary and not supplied by Goers's statements in the phone call.  This Court pointed out to the parties that the continued viability of the corroboration rule is currently under review by the Supreme Court in State v. Porter, SC93851 (taken on transfer from State v. Porter, 2013 WL 5628670 (Mo. App. E.D. October 15, 2013)).  Since then, in subsequent filings to this Court, Goers admits that the rule does not apply to this case and expressly abandons the argument that M.G.'s testimony required corroboration:  "rather, it was simply insufficient on its face and in light of all the other evidence to sustain the conviction."

5

and make credibility determinations, which is not allowed under our standard of review. The believability of M.G.'s testimony in light of the surrounding circumstances was for the jury to determine, and we must defer to the jury's superior ability to assess her credibility.

Goers argues that the jury must have discredited M.G.'s testimony, and so should we, because they were unable to reach a verdict on the counts relating to the incidents when she was a teenager, which depended exclusively on M.G.'s testimony. Because the phone call only related to the shower incident when she was "little," he contends, her testimony was the only evidence relating to the teenage incidents. Goers concludes that the jury must have based its convictions for the shower incident entirely on the phone call, which he argues is not probative evidence of guilt. First, the jury's inability to reach a verdict on the other counts does not mean they discredited *all* of M.G.'s testimony. A jury may believe all, some or none of a witness's testimony. Wadel, 398 S.W.3d at 78.

Moreover, even if they did discredit her testimony, the phone call was, at least when construed favorably to the verdict, further evidence of guilt. Goers claims that the phone call contains at most a vague accusation of "touching" when she was "little" and that his responses do not amount to admissions of guilt, either because they are inaudible or explained by his misunderstanding of the conversation. Goers testified that he felt like they were having two different conversations and thought she was referring to a "whooping" he had given her when she was younger. By all accounts, Goers spanked his daughters as punishment when they were little. Even if the accusation "touched me when I was little" could be construed as referring to spanking M.G. as a child, the jury was free to accept M.G.'s explanation—that she was embarrassed to use more sexually explicit

6

language—and to disbelieve Goers's explanation. When, instead of denying it, Goers responded "that happened years ago" and also asked who M.G. had told, a reasonable juror could take that as an admission of guilt.

There was sufficient evidence to support this conviction.

Point I is denied.

In Point II, Goers claims that the trial court's failure to *sua sponte* declare a mistrial during the State's closing argument was plain error. He contends the State argued facts not in the record when the prosecutor suggested that M.G.'s psychological problems were caused by Goers touching her inappropriately. This claim of error was included in the motion for new trial, but there had been no objection at trial. Thus, we can review only for plain error, which we are especially reluctant to do in the context of closing argument. See State v. Edwards, 116 S.W.3d 511, 536 (Mo. banc 2003). "A conviction will be reversed based on plain error in closing argument only when it is established that the argument had a decisive effect on the outcome of the trial and amounts to manifest injustice." Id. at 536-37.

Here, the challenged argument was made during the State's rebuttal to Goers's closing argument, in which Goers's counsel brought up M.G.'s hallucinations, her psychosis and the voices she heard. In the context of the incidents that allegedly occurred when M.G. was a teenager, defense counsel argued there was nothing to support those claims:

> Was it a product of her hallucinations? I don't know. But we know her diagnosis is psychotic. Was it a product of the voices she was hearing? I don't know. And unfortunately, this is a girl with problems. *These are not as a result of anything her father or her mother did to her. These are just problems that she's grown up with, unfortunately.* The cancer, it's not

a cause of that. She took a lot of pain medications. I don't know what she was imagining or thinking at the time. It's just unfortunate.

(emphasis added). In rebuttal, the State argued that M.G.'s mental condition did not cause her to make up these allegations:

And then [M.G.] had sleeping problems, and she had night terrors, and sleepwalking, and she had voices telling her to steal and cheat on a test. She didn't say hurt her sisters like defense counsel said. Hmm, wow, did those things cause her to lie about this? No. Was the fact that she was being sexually abused continuously by her father causing her to have sleep terrors, causing her to sleepwalk, causing her to have sleeping problems, causing her to have self-destructive behaviors like cheating on tests? That makes sense. Yeah, it does make sense that this little girl was going through all of that because of what was going on with dad. The guy she loved so much.

Prosecutors have considerable leeway to make retaliatory arguments in closing and may rebut any issue raised by the defense. State v. Carter, 415 S.W.3d 685, 691 (Mo. banc 2013); Greer v. State, 406 S.W.3d 100, 106 (Mo. App. E.D. 2013). This is true even if the State's argument would otherwise be improper. State v. Petty, 967 S.W.2d 127, 136 (Mo. App. E.D. 1998). Here, Goers raised M.G.'s psychological issues, claiming they were not caused by something her parents did and suggesting the allegations against Goers were a product of her hallucinations. The State was allowed to retaliate, as it did, against this argument by contending the opposite: that M.G.'s psychological condition was the result of Goers's behavior and did not cause her to make up these allegations. The failure to *sua sponte* declare a mistrial in this situation cannot be plain error even if the State's argument was, as Goers contends, an unreasonable inference from facts not in the record. See State v. Rawlins, 932 S.W.2d 449, 454 (Mo. App. W.D. 1996) (argument that defendant could seek redress for police misconduct in civil suit went beyond issues in case, but was made in retaliation to defense closing

8

argument and therefore no reversible error); see also Petty, 967 S.W.2d at 136 (misstatement of law was impermissible in closing argument, but no plain error because made in response to defense argument).

Moreover, whether proper or not, this argument did not have the decisive effect on the verdict that Goers claims it did. Goers points to the jury's questions "when did [M.G.] begin taking medication and which types?" and "when did she see the psychiatrist and for how long?" He claims the jury must have been trying to determine whether her conditions were caused by Goers's conduct, as the State had argued. Although the prosecutor's comment was made toward the end of the State's rebuttal argument shortly before the jury began deliberations, the jury's question came the next day after almost nine hours of deliberation. Moreover, that question just as likely indicates the jury was analyzing whether M.G.'s allegations were a product of her psychotic imagination or the medicine she was taking, as the defense had argued. This one comment[3] by the prosecutor in response to an issue raised by the defense did not result in a manifest injustice; nor is there a reasonable probability, in light of the other evidence supporting the conviction, that the verdict would have been different had that one comment not been made.

Point II is denied.

In Point III, Goers argues that the DVD containing the video recording of his conversation with M.G. was inadmissible. He claims that Goers's voice is inaudible on that DVD and therefore cannot constitute a party admission or prior inconsistent statement, but instead was improper bolstering of M.G.'s side of the conversation.

---

[3] Goers's suggestion in his brief that the prosecutor "beat her chest and insisted, over and again, that M.G. suffered from serious mental challenges BECAUSE her father had abused her" mischaracterizes the extent of the argument.

Counsel did not object when the State sought to admit this evidence at trial. Rather, outside the presence of the jury, defense counsel and the prosecutor agreed that certain portions of the DVD showing the time before and after the phone call would not be admitted. Then, back in front of the jury, defense counsel stated affirmatively "I have no objection" to its admission. No motion was made to exclude this evidence before trial and no claim of error in admitting it was raised in post-trial motions. Therefore, Goers seeks plain error review. But having stated affirmatively at trial that there was no objection, appellate review of its admission is waived, including plain error review under Rule 30.20. See State v. Williams, 411 S.W.3d 275, 277 (Mo. App. S.D. 2013); State v. Johnson, 284 S.W.3d 561, 582 (Mo. banc 2009); State v. Thompson, 401 S.W.3d 581, 586 (Mo. App. E.D. 2013). Moreover, Goers introduced the CD audio recording (on which Goers's voice is also inaudible) of the same phone conversation contained on the challenged DVD, repeatedly played portions of that CD for the jury during cross-examination and implored the jury to take the CD into deliberations where they could listen to it again and again. Thus, even if we were to review it, the admission of the same or similar evidence by Goers's himself defeats his claim of manifest injustice and miscarriage of justice. See State v. Willis, 10 S.W.3d 156, 158 (Mo. App. E.D. 1999).

Point III is denied.

The judgment is affirmed.

Lawrence E. Mooney, P. J. and
Sherri B. Sullivan, J., concur.

10