STATE of Missouri, Respondent,

v.

Jerome A. MCELROY, Appellant.

WD 79223

Missouri Court of Appeals,
Western District.

OPINION FILED: May 30, 2017

Natalie Hull, Kansas City, MO, Counsel for Appellant.

Daniel McPherson, Jefferson City, MO, Counsel for Respondent.

Before Division Two: Thomas H. Newton, P.J., James Edward Welsh, and Karen King Mitchell, JJ.

James Edward Welsh, Judge

Jerome McElroy appeals the trial court's judgment, following a jury trial, convicting him of first-degree robbery (§ 569.020, RSMo [1]) and armed criminal action (§ 571.015). We affirm.

## Background

The evidence at McElroy's trial [2] showed that two men entered a Little Cae-

---

1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2000.

2. We view the evidence in the light most favorable to the verdict. *See State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

sar's pizza restaurant on May 24, 2014, while manager April Bell was counting the money in a cash register. Bell saw that one of the men was carrying a gun, so she quickly closed the register. Bell testified that she could see both men's faces. She stated that the gunman, whom she later identified as McElroy, had "a little bit" of facial hair, and she particularly noticed "his eyes and his size."

Bell told the jury that McElroy jumped over the counter, put a gun to the back of her head, and told her to open the register. Bell complied. McElroy then pulled her to the other register, demanded the money from it, and threatened to shove the gun into her head harder unless she gave him the money immediately. After Bell opened the second register, McElroy ordered her to open the safe. She told him that it was on a time lock and she could not open it. McElroy jumped back over the counter, and the two men ran out the door. Bell called the police.

Detective Anthony Castelletto reviewed the store's surveillance video.[3] He saw that the robbers were not wearing gloves and had touched certain areas that an ordinary customer would not touch. Castelletto asked a crime scene technician to dust those areas for fingerprints. Four of the recovered prints were matched to McElroy: one was lifted from the counter between the cash registers; the other three were taken from the glass on the upper portion of a door.

The next day, police arrested Charles Harris, who was riding in the passenger seat of a vehicle that matched the description of one used in the robbery. The police received information from Harris about a suspect who went by "JJ." Officer Johnathon Dawdy searched social media ac-

counts and found a Facebook page for someone named "JJ da guy." He compared a picture of McElroy to pictures on the Facebook page and confirmed that McElroy was "JJ da guy." The photos on the Facebook page showed a tattoo that said "RIP Kevin" and covered nearly the entire top of McElroy's right hand. Dawdy testified that he had seen the same tattoo on one of the robbers in the Little Caesar's surveillance video. Detective Castelletto also concluded that the same tattoo was depicted in both the video and the Facebook photos.

Upon arresting McElroy, Officer Dawdy could see that he was the same person identified on Facebook as "JJ da guy." Dawdy also noticed that McElroy had the same tattoo on his right hand that he had seen on the Facebook page and on the surveillance video.

April Bell identified both Harris and McElroy from photo line-ups. She identified McElroy as the gunman, and she stated at trial that she was absolutely sure of her identification. Bell also made an in-court identification of McElroy. She told the jury that there was no doubt in her mind that he was the man who held a gun to her head.

McElroy did not present any evidence. During closing argument, defense counsel reminded the jurors of McElroy's "very large ornate and dark tattoo on his right hand" that they had seen in one of the Facebook photos. She urged the jury to ask to see everything that had been admitted into evidence (which the jury did), and she proposed that the video and the stills from it would *not* show a tattoo on the gunman's hand. Counsel also asserted that, if Bell's identification of McElroy was

---

**3.** Both the surveillance video and still photos taken from it were admitted as evidence and shown to the jury.

wrong, then the State did not have any evidence.

The jury found McElroy guilty of first-degree robbery and armed criminal action. The court sentenced him to concurrent prison terms of twelve years and three years, respectively.

## Discussion

■ McElroy contends that the circuit court plainly erred in allowing evidence obtained from the Facebook page to be presented at trial and in permitting the State to elicit testimony about and argue that the Facebook profile of "JJ da Guy" connected McElroy to Harris and to the Little Caesar's robbery, "because the ownership and identity of the Facebook page was not properly authenticated."

At no point during the trial did McElroy's defense counsel dispute that the "JJ da guy" Facebook page belonged to McElroy or that he was depicted in the photos on that page. In fact, during a bench conference on an unrelated motion *in limine*, defense counsel told the court that, as part of her trial strategy, she intended to elicit testimony about the Facebook page to discredit Harris's identification of the owner of that page as one of the robbers.

During Officer Dawdy's testimony, he stated that, based on information from Harris about a suspect who went by the name "JJ," he discovered a Facebook page for a person named "JJ da guy." Dawdy told the jury that he then compared a photo of McElroy to photos posted on JJ da guy's Facebook page and determined that McElroy and JJ da guy were the same person.

When the State sought to admit those Facebook photos as State's Exhibits 13-15, defense counsel asked to approach the bench, and the following discussion ensued:

[Defense Counsel]: Judge, I'm going to object to these pictures being introduced into evidence, because there is hearsay all over them. These are actually Facebook page, like stills that have been taken and printed off of the computer. I mean, there's writing on here. I haven't read everything, but it is not just a picture. So I'm going to object to the hearsay that is included in the photographs.

THE COURT: So you're okay with the photos, just not some of the words?

[Defense Counsel]: Right, right.

The prosecutor offered to use other photos from the Facebook page that did not include any words, and defense counsel stated that that would resolve her objection. Officer Dawdy then identified State's Exhibits 17, 18, and 19 as photos of McElroy and of the tattoo on his right hand. Defense counsel stated, "No objection," when the photographs were offered into evidence. The court admitted the exhibits, and they were published to the jury.

■ Generally, we review a trial court's admission of evidence for an abuse of discretion. *State v. Blair*, 443 S.W.3d 677, 682 (Mo. App. 2014). Where there was no objection to the admission of the evidence, our review, if any, is for plain error only. *Id.* (citing *State v. McFadden*, 369 S.W.3d 727, 753 (Mo. banc 2012)). Rule 30.20 authorizes this Court, in its discretion, to review "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Here, McElroy concedes that he failed to preserve this claim and asks this Court to review it for plain error.

■ We decline to do so. McElroy has waived review of *any* claim of error related to the admission of this evidence. *See State v. Johnson*, 284 S.W.3d 561, 582 (Mo.

banc 2009). Plain error review is waived when counsel has affirmatively acted in a manner that precludes a finding that the failure to object was due to "inadvertence or negligence." *Id.* "Plain error review does not apply when a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce or for a trial strategy reason." *Id.*; *State v. Goers*, 432 S.W.3d 276, 282 (Mo. App. 2014) (a statement of "no objection" when evidence is introduced "affirmatively waives" plain error review of its admission).[4] Here, defense counsel stated "no objection" to the admission of the Facebook photographs, and she told the court that she intended to use testimony about the Facebook page as part of her trial strategy. Defense counsel's strategic decision not to object to the Facebook evidence and her affirmative statement that she had "no objection" to the admission of the Facebook photographs constituted a waiver.

Accordingly, McElroy has waived his claim that the Facebook evidence was improperly admitted. In any event, this is not a case where we would exercise our discretion to conduct a plain error review.

We affirm the circuit court's judgment.

All concur.

---

4.  Specific to a claim of lack of foundation for the admission of evidence, in *State v. Tisius*, 362 S.W.3d 398, 407 (Mo. banc 2012), our Supreme Court explained that it is "particularly important" that an objection on the basis of an inadequate foundation "be specific," as deficiencies in foundation often can be remedied. *Id.* The Court declared that it "will not review the contention of inadequate foundation raised for the first time on appeal." *Id.*